UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HECTOR GONZALEZ, on behalf of himself and all other plaintiffs similarly situated, known and unknown, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 1:21-CV-04276 |
| v. | ) ) | Judge Edmond E. Chang |
| MAVERICK EXTERIORS, LLC, an Illinois Limited liability company, GEOFF HANSSLER, individually and ELIZABETH HANSSLER, individually, | ) ) ) ) ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Hector Gonzalez used to work for Maverick Exteriors, LLC. He now brings this proposed class action against his previous employer and its individual owners, Geoff Hanssler and Elizabeth Hanssler (for convenience's sake, the Opinion will refer to Maverick as a stand-in for all the Defendants). Gonzalez alleges that Maverick illegally failed to pay overtime to him and other employees.[1] He now seeks overtime pay under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b), and the Illinois Minimum Wage Law (IMWL), 820 ILCS § 105/1, *et seq*. R. 1, Compl.[2] After this Court granted Gonzalez's motion for stage-one conditional certification, R. 22, he now moves for sanctions against Maverick for improperly interfering with the collective-notice

---

[1]The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331 and supplemental jurisdiction over the state claim under 28 U.S.C. § 1367.

[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

process. R. 27, Mot. Supp. Notice. During the briefing of this motion, Gonzalez submitted the declaration of his counsel, John Billhorn. R. 33-1, Billhorn Decl. Maverick moves to strike the declaration. R. 37, Mot. Strike. This Opinion addresses both motions, and for the reasons discussed below, the motion to issue supplemental notice is granted in part and denied in part, while the motion to strike is granted.

## I. Background

Maverick Exteriors is a residential home construction business located in Woodstock, Illinois. Compl. ¶ 3. It performs an array of construction services related to residential homes, including constructing and installing "siding, soffits, roofs, gutters, etc." *Id.* As owners of Maverick, Geoff and Elizabeth Hanssler are authorized to carry out its wage and hour practices. *Id.* ¶ 4. Gonzalez, formerly employed by the Defendants as a laborer and crew leader between around March 2020 and June 2021, alleges that the Defendants regularly denied him and other employees overtime pay and engaged in practices that violate the FLSA and IMWL. *Id.* ¶¶ 5–9.

Gonzalez filed his complaint in August 2021, Compl., and was granted stage-one conditional certification in January 2022. R. 22. The Court conditionally certified a collective containing "all past and present workers who, since August 2018, worked for Defendants and were paid on an hourly basis." *Id.*; *see* R. 21 ¶ 4.

As part of the January 2022 certification order, the Court approved notice and consent forms agreed on by both sides. R. 22; *see* R. 21, Pl.'s Exh. A. The Court authorized the mailing of the notice to proposed collective members "that may have been subjected to the alleged practice to not pay overtime premiums for hours worked in

2

excess of 40 in individual work weeks." Pl.'s Exh. A at 2. Contained in the Order was a brief description of the case, information on how collective members could opt-in to the suit or do nothing, and the legal implications of choosing either option. The Court directed those interested in joining the suit to complete and submit a consent form authorizing the filing of claims in putative collective members' names against the Defendants "for their alleged failure to pay overtime wages and other alleged violations." *Id.* at 5.

On February 2, 2022, Gonzalez mailed the approved notice and consent forms. Mot. Supp. Notice 8. Eight days after mailing the forms, Gonzalez was notified that Maverick had engaged in communications with, and made payments to, members of the collective action. *Id.* 9. Gonzalez emailed Maverick about these allegations and asked whether Maverick had communicated and paid collective members in exchange for a release of claims. *Id.* 10; *see* R.27-1, Pl.'s Exh. 1. Maverick responded later that day, saying that the company indeed had paid "current and former employees who were employed during the three years prior to the lawsuit for the half their hourly rate[.]" R. 27-2, Pl.'s Exh. 2. According to Maverick, these checks were "hand-delivered" between November 17 and 19, 2021, before Gonzalez filed the motion for conditional certification. *Id.* Maverick insists that it never communicated with former or current employees about the lawsuit and never suggested a release from class claims. *Id.* As proof, Maverick attached two sample letters, one to current employees and one to former employees. *Id.*; *see* R. 27-3, Pl.'s Exh. 3; R. 27-4, Pl.'s Exh. 4.

3

The sample letters contain slight differences but both say, in essence, that "Maverick now pays each of its hourly employees at the rate of one and one-half times the employee's regular hourly rate of pay for every hour worked in excess of forty hours in a single workweek." Pl.'s Exhs. 3, 4. The letters also contain the following paragraph:

> Additionally, Maverick is making a single payment to each current and former employee for overtime hours which the employee worked in the last three years, until the time we changed our policy. You were paid your regular rate for those hours. The enclosed check represents one-half the hourly rate you were earning at the time you put in the extra hours, times the number of overtime hours that you worked. Because this payment represents wages, normal tax withholdings are deducted.

*Id.* The letters omit any mention of Gonzalez, this lawsuit, the opt-in process, or a release of claims in exchange for accepting monetary compensation. *Id.*

Shortly after receiving this information, in mid-February 2021 Gonzalez filed a motion to issue supplemental notice and consent forms to collective members and to limit future communication by the Defendants with the members. Mot. Supp. Notice. As part of the briefing on this dispute, Gonzalez attached the declaration of his counsel, John Billhorn. *See* Billhorn Decl. Maverick moved to strike Billhorn's declaration. Mot. Strike.

## II. Analysis

### A. Motion to Issue Supplemental Notice

Gonzalez requests that the Court (a) issue to the collective a supplemental notice clarifying the rights of collective members and (b) limit the Defendants' future communications with the members. Mot. Supp. Notice at 12–13; Pl.'s Reply at 10–14.

4

Specifically, Gonzalez alleges that Maverick engaged in improper communications with the collective on their "wage and hour practices and [Maverick's] failure to pay legally mandated overtime." Mot. Supp. Notice ¶ 9. According to the Plaintiff, this "back-channel campaign" has significantly reduced the likelihood that employees will opt-in to the suit, and a conversion from Stage One-Conditional Certification to Class Certification is thus proper. *Id.* ¶¶ 9, 35, 36; Pl.'s Reply at 16–18. Gonzalez further requests that Geoff Hanssler submit to a deposition concerning Maverick's communications with the collective and that Maverick produce all records relevant to these contacts with collective members. Mot. Supp. Notice at 12; Pl.'s Reply at 14–16. In response, Maverick contends that its communications with (and payments to) potential collective members do not require any curative action by the Court. R. 29, Defs.' Resp. at 3–10.

Generally, plaintiffs and defendants have the right to communicate with putative collective (and class-action) members. *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 759 (7th Cir. 2000). These communications, however, may be limited by the Court under Federal Rule of Civil Procedure 23 "on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). For example, federal courts have restricted communications to "prevent abuse of the class action process such as … misleading communications and communications which affect a putative class members' decision to participate in the class action." *Kuhl v. Guitar Ctr. Stores, Inc.*, 2008 WL 5244570, at *3 (N.D. Ill. Dec. 16, 2008)

5

(cleaned up).[3] Before a district court may restrict any communications, the court must carefully balance "the potential for abuse created by the class action and the right of the [party] to contact potential class members." *Williams*, 204 F.3d at 759.

Here, Maverick contends that it did not nothing wrong when it paid employees amounts which they were owed, so the Court should not restrict its communication with potential collective members. Defs.' Br. at 6; *see Fast v. Cash Depot Ltd.*, 2017 WL 8727852, at *1 (E.D. Wis. Aug. 29, 2017) ("Plaintiff has not shown that Defendant's communication to its employees of its intent to pay them whatever it owes … warrants the type of restriction on communication rejected."). Based on the record evidence so far, the Court agrees with the Defendants that an outright ban on communication with proposed collective members would go too far. After all, Maverick does *not* seek a release from the claims: its communications with proposed collective members do *not* request a release from litigation in exchange for monetary compensation. *See* Pl.'s' Exhs. 3, 4. This is corroborated by the Defendants' counsel, who explained that "[t]here was no suggestion of a release [in the notice], nor any discussion about participation in the lawsuit." Pl.'s Exh. 2. Taken as a whole, Maverick's offers to pay collective members do not meet the abusive conditions typically required to completely ban an employer from communicating with a party or other potential plaintiffs. *See e.g.*, *Barreda v. Prospect Airport Servs. Inc.*, 2008 WL 7431262, at *4

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

(N.D. Ill. Sept. 29, 2008) (the employer made "harassing comments" and repeatedly criticized plaintiff about his job performance); *Wang v. Chinese Daily News, Inc.*, 236 F.R.D. 485, 487 (C.D. Cal. 2006) (during the opt out period, employer posted signage saying "Don't Tear the Company Apart! Don't Act Against Each Other!").

But there is good cause to require some curative notice, because Maverick did engage in what could be viewed as coercive behavior. There are two circumstances where communications may be considered "coercive": (1) unilateral communications, that is, "communications made by only one side in the case"; and (2) "the existence of a business relationship between class members and the class opponent." *Mullen v. GLV, Inc.*, 334 F.R.D. 656, 662 (N.D. Ill. 2020), *reconsideration denied*, 2020 WL 5630454 (N.D. Ill. Sept. 20, 2020). Unilateral communications are "rife with potential for coercion" because they present only one party's view of the facts "without an opportunity for rebuttal." *Id.* (cleaned up). When a class opponent is also the employer of potential class (or collective) members, "class members may feel compelled to opt out to stay in the class opponent's good graces." *Id.*

Naturally, not every unilateral communication made by an employer to an employee will be coercive. Here, however, the line was crossed such that some curative notice is required. To begin, even though the case had been filed, Maverick unilaterally issued the so-called Overtime Pay notices to potential collective members without communicating the company's plan to Gonzalez. *See* Pl.'s Exh. 1 (describing the Plaintiff's concern that Maverick engaged in "a back-channel campaign of paying putative class members in exchange for some sort of release"). The notices themselves contain

7

payment information unreviewed by Gonzalez. The notices specifically contend that Maverick is making "a *single* payment" to current and former employees for overtime hours worked over the past three years. Pl.'s Exhs. 3 (emphasis added), 4. According to Maverick's notice, the enclosed check "represents one-half the hourly rate [employees] were earning at the time [the employee] put in extra hours, times the number of overtime hours that [the employee] worked." *Id.* But as Gonzalez rightly points out, the notices do not provide a full accounting of the payments nor information that proposed class members might be entitled to additional damages, interest, or other remedies. *See* Mot. Supp. Notice ¶¶ 17, 21. The one-sided presentation sounds authoritative and final (final in terms of the amounts owed), and thus would naturally pose a risk of deterring the employees from joining the collective action.

What's more, as the employer of the collective members, Maverick does wield significant influence over its employees. Gonzalez points out that around 80% of current collective members (17 of 21 identified employees) are current Maverick employees. Mot. Supp. Notice ¶ 27; Pl.'s Reply at 9. Those employees have a vested interest in maintaining a positive relationship with Maverick. Because the notices present the timeline and calculation of money owed in a straightforward fashion, without qualifying statements or disclaimers, it can be plausibly read as an instruction to employees that this is the sole remedy that they will receive. This inference is underscored by the statement that Maverick is making a "single" payment and the omission of any information concerning statutory damages or prejudgment interest, both of which are potential forms of recovery. For example, Maverick's framing of the payments as a

8

correction only for overtime hours omits other potential damages that might be recoverable (if the payments are indeed even full payments for overtime). *See* Mot. Supp. Notice ¶ 21. It is thus reasonable for collective members to believe that their employment or relationship with Maverick could be jeopardized if they seek additional moneys beyond what Maverick coughed up after the lawsuit was filed.

Two more facts support the issuing of a curative notice. First, not only did Maverick fail to tell Gonzalez about the Overtime Pay notices, but the company also did not alert the Court. If Maverick had notified the Court that the company was offering these payments and sending the accompanying notice *before* issuing them, the Court most certainly would have required that the stage-one certification notice address the payments and the prior notice. Second, Gonzalez plausibly argues that Maverick's actions actually chilled collective-member participation in the suit. According to Gonzalez (and the Court adopts as true for the purpose of this motion), no one has joined the case after Maverick's issuance of the Overtime Pay notices. Pl.'s Reply at 9. Gonzalez attests in a sworn declaration that at least three current employees of Maverick, and potentially many more, were unlikely to join the suit because "they have already been paid by Defendants and have no reason to get involved." R. 27-6, Pl.'s Exh. 6, Gonzalez Decl. ¶ 5.

So the Court concludes that the supplemental notice attached as R. 27-7 must be distributed to the collective, with three modifications. First, on page 2 of the notice, the two sentences, "The Court has ruled that these unauthorized letters distributed by Defendants were improper, interfered with this collective action and failed to

9

properly explain your rights under federal and state law. In addition to this Supplemental Notice, the Court has ordered Defendants to immediately cease from engaging in additional unauthorized communications with past and present employees that were issued Notice of this case," shall be replaced with this one sentence: "The Court has ruled that these letters distributed by Defendants require this additional supplemental notice to explain your rights under federal and state law."

Second, on page 2 of R. 27-7, the phrase "by themselves" shall be inserted between the words "Overtime Pay letter in no way" and "waived or compromised your claims or you right to joint this lawsuit." Third, in the next sentence of R. 27-7, the phrase, "It is likely that under state and federal law," shall be replaced by "It is possible that under state and federal law."

As a final note, for the supplemental notice to be "proportionate to the gravity of the offense[,]" *Montaño v. City of Chicago*, 535 F.3d 558, 563 (7th Cir. 2008), Maverick shall pay for the costs of the mailing. The Court denies all other requested relief in Gonzalez's motion.

### B. Motion to Strike

Next, Maverick moves to strike the declaration of Gonzalez's lawyer, John Billhorn. Mot. Strike; *see* Billhorn Decl. The Defendants advance multiple grounds for striking the declaration including that the declaration violates Federal Rule of Evidence 701 and contains no factual statements. Mot. Strike at 1–2; R. 40, Defs.' Reply at 3–4. Gonzalez requests that the Court use its discretion to admit the "useful, valuable, admissible" aspects of the declaration. R. 38, Pl.'s Resp. at 2.

10

Under Rule 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). That being said, motions to strike are generally disfavored because they "potentially serve only to delay." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (cleaned up). Motions to strike are proper, however, if they expedite litigation or remove unnecessary clutter from the case. *Id.; see e.g.*, *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992) (allegations may be stricken if the matter bears no relationship to the controversy). "The party moving to strike has the burden of showing that the challenged allegations are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial." *Pavlik v. FDIC*, 2010 WL 3937621, at *1 (N.D. Ill. Oct. 5, 2010) (cleaned up).

The Court concludes that this is one of the rare instances in which a motion to strike is proper. Gonzalez asks the Court to review the Billhorn declaration and allow only the permissible portions of the document. Pl.'s Resp. at 4–6. But the entirety of the declaration is inadmissible. To begin, the declaration violates Federal Rule of Evidence 701. Rule 701 provides that a lay witness may offer opinion testimony only to the extent that it is "(a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. Although Billhorn of course may testify to his own perceptions, he may not offer legal opinions that require scientific, technical, or other specialized knowledge as a lay witness. *United States v. Noel*, 581 F.3d 490, 496 (7th Cir. 2009)

11

(citing cases). Billhorn's legal conclusions concerning (1) Gonzalez's claims in his complaint and (2) the propriety of Maverick's communications with proposed collective members run throughout the declaration. *See e.g.*, Billhorn Decl. ¶ 4 (attributing "illegal pay practices" to Maverick); *id.* ¶ 6 (stating Maverick "would not voluntarily seek to pay current and past employees"); *id.* ¶ 8 (describing "common knowledge in the area of employment law"); *id.* ¶ 12 (concluding Maverick prevented employees "from exercising their rights under the prevailing wage and hour laws."). These statements stand in sharp contrast to statements permitted by Rule 701. *See United States v. Christian*, 673 F.3d 702, 708–09 (7th Cir. 2012) ("Lay testimony results from a process of reasoning familiar in everyday life[.]") (cleaned up).

The declaration also contains only argument, not facts. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *See* Fed. R. Civ. P. 56(c)(4). Personal knowledge includes inferences and opinions that "must be grounded in observation or other first-hand personal experience." *Visser v. Packer Eng'g Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). Here, Billhorn fails to set out any relevant facts in his declaration. Although he provides a summary of his legal experience and credentials, *see* Billhorn Decl. ¶¶ 1–3, the vast majority (and only relevant portion) of his declaration serves as legal analysis concerning Maverick's interference with Gonzalez's certification notice. The Court grants the motion to strike.

12

### III. Conclusion

The Court grants Gonzalez's motion to issue a supplemental notice to the collective and denies all other requested relief in the motion. The mailing shall be paid by Maverick and Gonzalez shall issue the mailing with reasonable promptness. The Court grants Maverick's motion to strike the declaration of John W. Billhorn. The tracking status hearing of September 23, 2022, is reset to October 28, 2022, at 8:30 a.m., but to track the case only (no appearance is required). Instead, the parties shall file a status report by October 21, 2022, proposing the next step of the litigation.

ENTERED:


s/Edmond E. Chang

Honorable Edmond E. Chang
United States District Judge

DATE: September 21, 2022